IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DARRELL WILSON JONES,          §
                               §
        Petitioner,            §
                               §
V.                             §        CIVIL ACTION NO. H-12-0634
                               §
RICK THALER, DIRECTOR, TEXAS   §
DEPARTMENT OF CRIMINAL         §
JUSTICE, CORRECTIONAL          §
INSTITUTIONS  DIVISION,        §
                               §
        Respondent.            §

## AMENDED[1] MEMORANDUM AND RECOMMENDATION GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is

Respondent's Motion for Summary Judgment (Document No. 12) against Petitioner's Federal

Application for Writ of Habeas Corpus (Document No. 1).    Having considered the motion,

Petitioner's response in opposition (Document No. 13), the claims raised by Petitioner in his § 2254

Application and Memorandum of Law in Support (Document Nos. 1 & 4), the state court records,

and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that

Respondent's Motion for Summary Judgment (Document No. 12) be GRANTED, that Petitioner's

Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED, and that this case

be DISMISSED WITH PREJUDICE.

---

[1] An Amended Memorandum and Recommendation is entered to address two of the Objections made by Petitioner to the Memorandum and Recommendation.

I.        **Introduction and Procedural History**

Darrell Wilson Jones ("Jones") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of a 2008 felony conviction for aggravated sexual assault of a child in the 85th District Court of Brazos County, Texas, Cause No. 07-05134-CRF-85.   On September 20, 2007, Jones was charged by indictment with two counts of aggravated sexual assault of a child.   The indictment also alleged, for enhancement purposes, a prior felony conviction for sexual assault of a child, for which Jones had received deferred adjudication.   Jones pled not guilty and proceeded to trial.   On June 11, 2008, a jury found Jones guilty of both counts.  The trial court, following a punishment hearing, sentenced Jones two days later, to two consecutive life sentences.   Jones' conviction was thereafter affirmed on appeal on November 18, 2009,   *Jones v. State*, No. 10-08-00621-CR, and his petition for discretionary review was refused on March 31, 2010.

Jones filed a state application for writ of habeas corpus on July 14, 2010.   The Texas Court of Criminal Appeals, on June 22, 2011, denied the application without written order on the findings of the state trial court without a hearing.   *Ex parte Jones,* Application No. WR-74,309-02.[2]   This § 2254 proceeding, filed by Jones on or about February 25, 2012, followed.

Respondent has filed a Motion for Summary Judgment (Document No. 12), to which Jones has filed a response in opposition (Document No. 13).   This § 2254 proceeding is ripe for ruling.

---

[2] Jones' first state application for writ of habeas corpus was filed on April 22, 2010.   *Ex parte Jones*, WR-74,309-01.   It was dismissed on August 25, 2010, because at the time it was filed Jones' conviction had not yet become final through the issuance of the appellate mandate.

II.   **Claims**

Jones raises five claims in his § 2254 application:

1.      that his appellate counsel was ineffective for failing to challenge the trial court's exclusion of two venire persons for cause;

2.      that Section 264.404 of the Texas Family Code is unconstitutional, and led to the violation of his right to a fair trial;

3.      that his due process rights were violated by virtue of the District Attorney's relationship with, and involvement in, Scotty's House, a child advocacy organization, which participated in the investigation of the sexual assault charges made the basis of his prosecution and conviction;

4.      that his due process rights were violated by virtue of the Brazos County Sheriff's relationship with, and involvement in, Scotty's House; and

5.      that his trial counsel was ineffective for: (a) failing to object to the State's use of the medical exam of his daughter Taylor; (b) opening the door to testimony/ evidence that Jones sexually assaulted "R" by touching her breasts; (c) failing to object on hearsay and confrontation grounds to testimony that Jones sexually assaulted "R" by touching her breasts; (d) failing to request a limiting instruction on testimony that he sexually assaulted "R" by touching her breasts; and (e) failing to object to the prosecutor's improper closing arguments.

In the Motion for Summary Judgment, Respondent first argues that Jones did not raise with the state courts his claim that section 264.404 of the Texas Family Code is unconstitutional and resulted in the violation of his right to a fair trial (claim 2), and his claims that his trial counsel was ineffective for opening the door to testimony about Jones touching the breasts of "R", and then failing to seek a limiting instruction as to that testimony (claims 5(b) and 5(d)).  According to Respondent, those claims, because they were not properly raised with the state courts, are unexhausted and procedurally barred from review herein.  As for the remainder of Jones' claims (claim 1, 3, 4, 5(a), 5(c), and 5(e)), Respondent argues that no relief is available to Jones on the merits of those claims under 28 U.S.C. § 2254(d).

3

III.     **Standards of Review**

    A.     **Exhaustion and Procedural Bars**

Federal habeas corpus petitioners are required to exhaust their available state law remedies. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). In order to exhaust state law remedies, Texas prisoners must fairly present their claims to the highest state court, the Texas Court of Criminal Appeals, Tex. Code Crim. Proc. Ann. art. 44.45, through a petition for discretionary review and/or a state application for writ of habeas corpus. Tex. R. App. P. 68; Tex. Code Crim. Proc. ann. art. 11.07, et seq. "'It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'" *Ex Parte Wilder*, 274 F.3d 255, 259-260 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Rather, the petitioner must have presented the highest state court with the same claim, the same factual basis for the claim, and the same legal theory in order to meet the exhaustion requirement. *Id.* "[F]leeting reference to the federal constitution," especially when such reference is not accompanied by any federal case law authority, generally does not suffice to "alert and afford a state court the opportunity to address an alleged violation of federal rights," and that "vague references to such expansive concepts as due process and fair trial" in a state court proceeding will not satisfy the exhaustion requirement. *Id.* at 260.

When unexhausted claims are contained in a § 2254 application, and when such claims, if the petitioner tried to exhaust them in state court, "would be barred by the abuse-of-the-writ doctrine of Article 11.071 of the Texas Code of Criminal Procedure," the claims should be dismissed with prejudice as procedurally barred. *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999); *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("A procedural default also occurs when a

prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"), *cert. denied*, 523 U.S. 1139 (1998).  Only when the petitioner makes a colorable showing that his unexhausted claims would be considered on the merits by the state courts if he attempted to exhaust them, should the claims be dismissed without prejudice. *Horsley,* 197 F.3d at 136-137.

### B.     Merits Review under § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'"  *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court]

cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "State-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1399 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). Similarly, state court decisions are reviewed under § 2254(d) by reference to the facts that were before the state court at the time. *Id.* ("It would be strange to ask federal courts to analyze whether a state court adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

For factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849 (2010). Instead, factual determinations made by state courts carry a presumption of correctness and federal courts on habeas review are bound by them unless there is clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court,

a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786-787 (2011). Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). This is true regardless of whether the state court rejected the claims summarily, or with a reasoned analysis. *Cullen*, 131 S.Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial."). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 131 S.Ct. at 786.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted); *see also Price*, 538 U.S. at 641 ( "'[A] federal habeas court may

7

not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)).   Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).  A habeas petitioner can only overcome § 2254(d)'s bar "by showing that 'there was no reasonable basis'" for the state court's rejection of his claim(s). *Cullen*, 131 S.Ct. at 1402 (quoting *Richter*, 131 S.Ct. at 784)).

## IV.    Discussion – Exhaustion and Procedural Bars

Respondent argues, and the state court records show, that Jones did not raise with the state courts his challenge to section 264.404 of the Texas Family Code (claim 2) or his claims that his trial counsel was ineffective for opening the door to testimony that Jones assaulted "R" by touching her breasts (claim 5(b)) and for failing to request a limiting instruction as to the evidence that Jones assaulted "R" by touching her breasts (claim 5(d)).  While Jones did complain in his state application for writ of habeas corpus about the affiliation between the Brazos County Sheriff, the Brazos County District Attorney and Scotty's House, a child advocacy center, Jones did not challenge, as a claim, the constitutionality of  section 264.404 of the Texas Family Code, which sets forth who should be on the board of directors of child advocacy centers in Texas.  All Jones did was fleetingly question the constitutionality of section 264.404(a) of the Texas Family Code in one of the many proposed

findings of fact and conclusions of law he filed in the state habeas proceeding[3].  Such a fleeting reference does not satisfy the exhaustion requirement.  *Wilder*, 274 F.3d at 260.  That claim (claim 2) is therefore unexhausted.

Similarly unexhausted are Jones' ineffectiveness claims based on his counsel opening the door to testimony about Jones' assault of "R" and his counsel's failure to seek a limiting instruction. Jones did complain in his state application for writ of habeas corpus about his counsel's failure to object, on relevancy, extraneous offense and confrontation grounds, to the testimony of Janice Ansley about Jones' assault of "R".  And Jones did mention, in connection with that claim, that counsel should have sought a limiting instruction.  What Jones did not do is assert ineffectiveness claims based on counsel's failure to seek a limiting instruction, and counsel's "opening the door" to testimony about the assault of "R".  In particular, he did not argue or present any authority for his contentions that counsel was ineffective in either regard and did not distinguish those claims from his claim that counsel was ineffective for failing to object to testimony about the assault on "R."  As such, as separate claims of ineffectiveness, claims 5(b) and 5(d) are unexhausted.  However, to the extent the such claims can be construed as part of Jones' claim that counsel was ineffective for failing to object to the testimony about "R," they will be addressed below.

Because Jones did not fairly present claims 2, 5(b) and 5(d) to the Texas Court of Criminal

---

[3] In the Proposed Findings of Fact and Conclusions of Law Jones filed in the state habeas proceeding on May 25, 2011, Jones wrote:

> To the extent that Tex. Family Code § 264.404(a) require either Sheriff Kirk or District Attorney Bill Turner to personally serve on its Board at the same time it is acting as the investigative arm and providing witnesses in behalf of the Sheriff's and the District Attorney's arrests and prosecution it is unconstitutional under Federal Due Process and Equal Protection Clauses of the U.S. Constitution.

*Ex Parte Jones*, Application No. WR-74,309-02 at 207.

Appeals, and because Jones would be barred by Texas' abuse of the writ doctrine from raising those claims in a subsequent state application for writ of habeas corpus, the claims are unexhausted and procedurally barred from review.   Claims 2, 5(b) and 5(d) are subject to dismissal on procedural grounds.

## V.      Discussion – Merits Review under § 2254(d)

In connection with the denial of Jones' state application for writ of habeas corpus, the Texas Court of Criminal Appeals relied on extensive findings of fact and conclusions of law that were made by the state trial court.  Because the Texas Court of Criminal Appeals' rejection of the claims Jones raised in his state application for writ of habeas corpus is not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, Jones is, for the reasons set out more fully below, entitled to no relief on claims 1, 3, 4, 5(a), 5(c) and 5(e).

### A.      Due Process Claims (claims three and four)

In claims three and four, Jones complains about the fact that both the Sheriff of Brazos County and the Brazos County District Attorney are members of the board of Scotty's House. According to Jones, because the offenses made the basis of the charges against him were investigated by employees of Scotty's House, and because the complainant was interviewed by employees of Scotty's House, he was denied his due process right to a disinterested investigation and prosecution. Jones maintains that both Sheriff Christopher C. Kirk and District Attorney Bill Turner, by virtue of their association with Scotty's House, had personal and pecuniary interests in his prosecution and

10

conviction.

In rejecting these two due process claims, the Texas Court of Criminal Appeals relied on the

following findings of fact made by the state trial court:

3.     [Jones] claims that he was denied due process and due course of law because
       he was denied his right to a disinterested prosecutor and investigator for his
       case.  Specifically, he alleges that both District Attorney Turner and Sheriff
       Kirk held a personal and pecuniary interest in proceeding with [Jones'] case
       because both were on the Board of Directors for Scotty's House, a Child
       Advocacy Center.

4.     [Jones] supports his claim two ways:

       i)     From pages from the Scotty's House web site, which show that
       District Attorney Turner and Sheriff Kirk were on the board of Scotty's
       House and that Sheriff Kirk wrote a letter asking for financial support for
       Scotty's House capital campaign – to build a larger facility.

       ii)    By his base allegation – that both Sheriff Kirk and District Attorney
       Turner held a personal and pecuniary interest in proceeding with [Jones']
       case simply because they were on the board of directors for Scotty's House.

5.     [Jones] does not support his allegation – that both Kirk and Turner held a
       personal and pecuniary interest in proceeding with [Jones] case – with any
       credible evidence.

6.     Neither Sheriff Kirk nor District Attorney Turner receive any compensation
       for their service on said board, nor do they possess any oversight in the
       investigation aspects of Scotty's House.  See affidavit of Linda Patton.

7.     District Attorney Turner did not prosecute the instant case.  The case was
       tried by assistant district attorneys Brian Baker and John Brick.

8.     Sheriff Kirk did not investigate the instant case.  The case was investigated
       by Investigator Pollock of the Brazos County Sheriff's Office.

                                   * * *

9.     [Jones] claims that he was denied due process and due course of law because
       the Brazos County District Attorney failed to recuse his office from
       prosecuting the case.  Again, he reasons that District Attorney Turner held a
       personal and pecuniary interest in [ ] proceeding with [Jones'] case because
       he was on the Board for Scotty's House.

10.     The Court adopts its findings of fact for Ground Number One.

*Ex parte Jones*, Application No. 74,309-02 at 172-173.

The factual determinations made by the state trial court, and adopted by the Texas Court of

Criminal Appeals, are supported by the record, including the affidavit of Linda Patton, the executive

director of Scotty's House.  Patton stated in her affidavit:

> Separate and apart from the service branch of Scotty's House is the Board of Directors.  In order to maintain fiscal viability and community involvement, Scotty's House operates under the auspices of a non-profit 501(c)(3) board of directors.  Board representation is provided under Tex. Fam. Code § 264.404.  Board members receive no compensation for their service.  Board members set policy, provide fiscal oversight and approve how resources and programs are implemented.  Other responsibilities include fundraising and increasing awareness of Scotty's House in the community.  However, members of the Board do not participate on the multidisciplinary teams.

> Specifically, section 264.404 requires that:

> . . . the governing board must include an executive officer of, or an employee selected by an executive officer of:
> > (1) a law enforcement agency that investigates child abuse in the area served by the center;
> > (2) the child protective services division of the department; and
> > (3) the county or district attorney's office involved in the prosecution of child abuse cases in the area served by the center.

> Consequently, section 264.404 mandates that the sheriff and district attorney both serve on the board of Scotty's House.  Neither Sheriff Kirk nor District Attorney Turner serve on the multidisciplinary team nor do they receive any compensation.

*Ex Parte Jones*, Application No. WR-74,309-02 at 77-78.  While Jones has submitted herein, as he

did in the state habeas proceeding, information about Scotty's House that he obtained from the

internet, including information about the District Attorney's and the Sheriff's role as board members

of Scotty's House, he presented no evidence in the state habeas proceeding, and has offered none

here, that either the Sheriff or the District Attorney was personally involved in either the child

advocacy services Scotty's House provided to the complainant in this case, or the investigation and prosecution of the sexual assault charges against him.  As such, the Texas Court of Criminal Appeals' determination of the facts was not unreasonable, and based on those factual determinations, the Texas Court of Criminal Appeals' rejection of Jones' due process claims is not contrary to or based on an unreasonable application of clearly established Federal law.[4]  Thus, under § 2254(d), no relief is available to Jones on his two due process claims (claim two and claim three).

**B.      Ineffectiveness Claims**

In three ineffectiveness claims, Jones faults his trial counsel, Robertson Neal, for failing to object to the State's use of his daughter "Taylor's" unremarkable medical exam (claim 5(a)), for failing to object on hearsay and confrontation grounds to testimony that Jones sexually assaulted "R" by touching her breasts (claim 5(c)), and for failing to object to an improper closing argument by the prosecutor (claim 5(e)).  In addition, Jones faults his appellate counsel for failing to challenge on appeal, the state trial court's striking of two venirepersons, Robert Flynn and Tex Taylor, for cause.

The Texas Court of Criminal Appeals rejected each of these ineffectiveness claims on the merits after setting forth the applicable federal constitutional standard for reviewing ineffective assistance of counsel claims.  *Ex parte Jones*, Application No. WR-74,309-02 at 195 (citing to the ineffectiveness standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)).  In so doing, the Texas Court of Criminal Appeals adopted the state trial court's finding(s) that the affidavit of Neal was credible.  In addition, the Texas Court of Criminal Appeals adopted

---

[4] In rejecting Jones' due process claims, the Texas Court of Criminal Appeals, relying on the state trial court's findings and conclusions, determined that: (1) Jones had not proven any of his allegations by a preponderance of the evidence; (2) Sheriff Kirk and District Attorney Turner are required by section 264.404 of the Texas Family Code to sit on the board of Scotty's House, and (3) the District Attorney's office did not labor under a conflict of interest in prosecuting Jones.  *Ex Parte Jones*, WR-74,309-02 at 195-198.

13

the state trial court's finding that counsel's failure to object to the admission of Taylor's unremarkable medical exam and the testimony that Jones had sexually assaulted "R" by touching her breasts was consistent with counsel's reasoned strategy of attempting to show that the complainant was not credible and had fabricated the allegations against Jones. As for trial counsel's failure to object to the prosecutor's closing argument, the Texas Court of Criminal Appeals determined, based on the findings and conclusions of the state trial court, that the complained about statement was not improper and that such statement was not "extreme or manifestly improper" and did not inject new and harmful facts into the case. Finally, with respect to appellate counsel's failure to challenge the trial court's exclusion of venire persons Robert Flynn and Tex Taylor for cause, the Texas Court of Criminal Appeals concluded that there was no error to be complained of on appeal.

Claims of ineffective assistance of trial counsel are generally measured by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct

was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993).  In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378; *Cullen*, 131 S.Ct. at 1403 ("[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result") (quoting *Strickland*, 466 U.S. at 686)). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel.  The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record.  Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984).  The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct.  *Strickland*, 466 U.S. at 690-691.  Counsel will not be judged ineffective only by hindsight.  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124

S.Ct. 1, 6 (2003).

Claims of ineffective assistance of appellate counsel are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994). With respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989). Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose*, 141 F.Supp.2d at 704-705. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). As for *Strickland's* prejudice prong, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001).

When an ineffective assistance of counsel claim has been adjudicated on the merits by the state courts, federal habeas review is "doubly deferential," with the court taking a "highly deferential look at counsel's performance" under *Strickland*, and then imposing a second layer of deference under § 2254(d). *Cullen*, 131 S.Ct. at 1403. Under § 2254(d), therefore, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788.

A.      **Counsel's Failure to Object to Evidence (claims 5(a) and 5(c))**

The Texas Court of Criminal Appeals' rejection of Jones' ineffectiveness claims based on counsel's failure to object to certain evidence (claims 5(a) and 5(c)) is not contrary to *Strickland*, nor is it based on an unreasonable application of *Strickland*.   Neal stated in his affidavit that it was his theory, and the defense's strategy, to show that "the complainant was not credible and had fabricated her allegations of sexual assault . . . so that she would not have to live with Janice Ansley (complainant's step-mother) upon Janice Ansley's divorce from complainant's father."  *Ex Parte Jones,* Application No. WR-74,309-02 at 81.  That strategy is set forth in detail in Neal's affidavit, and is supported by the record and Neal's specific references to such in his affidavit.  *Id.* at 79-93.

The record shows that the complainant, at the time of the sexual assault offenses, lived with her step-mother, Janice Ansley, and her older sister "R" at Jones' home.  Jones, himself, had three children, including "Taylor."  Janice Ansley was married to the complainant's father, Robert Ansley, but at the time of the offenses Robert Ansley was incarcerated on a forgery offense. While they lived at Jones' house (from September 2003 though February 2004), Janice Ansley was involved in a sexual relationship with Jones that Robert Ansley, the complainant, and "R" all knew about.  Robert Ansley was released from jail/prison in July 2004.

The complainant made her outcry to Dena Patterson, a former neighbor, in July 2007, over four years after the sexual assault offenses.  That outcry was made to Dena Patterson while the complainant was staying with Dena Patterson in Bryan, Texas, and at a time when she had recently spent time with Taylor.  As introduced through testimony at trial, the complainant made the outcry because of fears that  Jones was sexually assaulting Taylor.  Her outcry was made at a time when Janice Ansley was going to divorce Robert Ansley.  While "R" wanted to live with Janice Ansley

after the divorce, the complainant did not.

The admission of Taylor's unremarkable medical exam (claim 5(a)) was consistent with the defense's theory that the complainant fabricated the allegations and her purported concern that Jones was sexually assaulting Taylor. Similarly, but not quite as straightforward, is counsel's failure to object to the testimony of Janice Ansley that "R" told her that Jones had sexually assaulted her by touching her breasts (claim 5(c)). According to Neal, he did not object to this line of questioning of Janice Ansley because Janice Ansley's version of how and what she was told about "R" differed from the version the complainant testified to at trial. *Ex Parte Jones*, WR74,309-02 at 90-93. This, Neal maintained in the state habeas proceeding, was consistent with his defense strategy – to show that the complainant was not credible.

The Texas Court of Criminal Appeals, by adopting the state trial court's findings of fact and conclusions of law, determined that Neal's strategy was reasonable and his failure to object to evidence of Taylor's unremarkable medical exam, and the testimony from Janice Ansley that she had been told Jones had sexually assaulted "R" by touching her breasts was consistent with that strategy. *Ex Parte Jones*, Application No. WR-74,309-02 at 200 ("The Court finds that counsel's trial strategy for going into Taylor's exam – which showed no physical evidence of abuse – was reasonable."; "[Jones] has not shown that counsel's performance was deficient"). That determination is itself, not unreasonable. Counsel pointed out inconsistencies in the complainant's version of the events, elicited testimony that the complainant was not always truthful, and highlighted the fact that there was no physical evidence that corroborated the complainant's allegations. In addition, counsel had the complainant admit on cross-examination that her outcry was made close to the time Janice Ansley filed for divorce from her father, and that she did not want to live with Janice Ansley

18

following the divorce.  While counsel's strategy was ultimately unsuccessful, it was not, in the context of the complainant's allegations and the other evidence admitted at trial, objectively unreasonable.  The Texas Court of Criminal Appeals' rejection of these two ineffectiveness claims is therefore not contrary to or based on an unreasonable application of *Strickland,* and, as such, no relief is available to Jones on the merits of those ineffectiveness claims under § 2254(d).

Similarly, to the extent Jones' claims that his counsel was ineffective for opening the door to testimony that Jones sexually assaulted "R"(claim 5(b)) and failing to request a limiting instruction as to that testimony (claim 5(d)) have been exhausted, such claims fail on the merits for the same reasons set forth above.  In particular, given counsel's strategy to show that the complainant was not credible, and his decision, as part of that strategy, to allow testimony about Jones touching the breasts of "R," counsel cannot be said to have performed deficiently for "opening the door" to such testimony, or failing to seek a limiting instruction as to such testimony.  Thus, on the merits, claims 5(b) and 5(d) fail on the Texas Court of Criminal Appeals' determination that counsel's strategy was not objectively unreasonable.

## B.  Counsel's Failure to Object to Improper Jury Argument (claim 5(e))

The Texas Court of Criminal Appeals' rejection of Jones' ineffectiveness claims based on counsel's failure to object to the prosecution's improper jury argument (claim 5(e)) is also not contrary to *Strickland*, nor is it based on an unreasonable application of *Strickland*.

In this proceeding,[5] Jones complains about counsel's failure to the following statement in the prosecutor's closing argument:

---

[5] In the state habeas proceeding, Jones complained about four aspects of the prosecutor's closing argument. In this proceeding, Jones focuses on only one.

> [Petitioner] is the person [complainant] sees in her dreams, who bothers her, who she thinks about when she thinks about being invaded.

According to Jones, that comment was improper because it injected the prosecutor's personal opinion and a plea for sympathy into the case.

In the state habeas proceeding, Neal addressed in his affidavit this claim of ineffectiveness as follows:

> . . . Applicant complains that I was ineffective because I failed to object to four arguments made by the prosecution during its closing argument. A review of the record shows that all four arguments were proper. Any objection on my part would have been meritless and antagonized the jury.

*Ex Parte Jones*, WR-74,309-02 at 93. The state trial court, in its findings of fact and conclusions of law that were adopted by the Texas Court of Criminal Appeals, found that the prosecutor's argument was a proper summation of the evidence, a reasonable deduction from the evidence, and an answer to an argument of the defense. *Ex Parte Jones*, WR-74,309-02 at 201. As a proper argument under Texas law, the Texas Court of Criminal Appeal concluded that counsel was not ineffective for failing to object. *Id.*

The Texas Court of Criminal Appeals' determination that the argument was proper under Texas law is a determination based on state law that is not reviewable herein. *Ries v. Quarterman*, 522 F.3d 517, 531 (5th Cir), *cert. denied*, 555 U.S. 990 (2008); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Moreover, that determination under Texas law – that the argument complained of was proper – forecloses a finding of deficient performance under *Strickland*. *Ries,* 522 F.3d at 531 ("Accepting the state court's conclusion based on state law that the objection had no merit, counsel was not ineffective for failing to make it."). In the absence of deficient performance, no relief is available on Jones' ineffectiveness claim under § 2254(d).

### C.     Ineffectiveness of Appellate Counsel (claim 1)

The Texas Court of Criminal Appeals' rejection of Jones' appellate ineffectiveness claim (claim 1) is similarly not contrary to *Strickland*, nor is it based on an unreasonable application of *Strickland*.

Jones maintains that his appellate counsel should have challenged the trial court's exclusion of two venire persons, Robert Flynn and Tex Taylor , for cause.  But, Jones has made no showing that such a claim had any arguable merit or that it was clearly stronger than the claims that were raised on appeal.  The record shows that Robert Flynn and Tex Taylor were stricken for cause on the prosecution's motion because neither was able to clearly and unequivocally commit to being able to determine guilt based only on one witness' testimony.  S.F. Voir Dire at pp. 184-186; 186-190. Under Texas law, such an inability to so commit is grounds for exclusion for cause.  It was on this basis that the Texas Court of Criminal Appeals rejected this ineffective assistance of appellate counsel claim:

> "The Court did not err in sustaining the State's challenges for cause to Flynn and Taylor.  See Lee v. State, 206 S.W.3d 620, 623 (Tex. Crim. App. 2006) (the State can properly challenge venirepersons who state they could not convict based on the testimony of one witness even if they believed the witness beyond a reasonable doubt."

*Ex parte Jones*, WR-74,309-02 at 203.

Because the exclusion of venirepersons Flynn and Taylor was proper under Texas law, counsel had no viable basis for objection to their exclusion.  Consequently, his performance was not deficient within the meaning of *Strickland*, and, under § 2254(d), no relief is available to Jones on this ineffective assistance of appellate counsel claim.

21

VI.      **Conclusion and Recommendation**

Based on the foregoing and the conclusion that Jones' claims are either unexhausted and procedurally barred from review, or that no relief is available on the merits of those claims under § 2254(d), the Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 12) be GRANTED and that Petitioner Darrell Wilson Jones' Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 21st  day of February, 2013.

Frances H. Stacy
United States Magistrate Judge